IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:24-cr-24 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| MALIK HUGHES, | : | ORDER DENYING MALIK HUGHES'S |
| | : | MOTION TO SUPRESS EVIDENCE |
| Defendant. | : | (Doc. 44) |

This matter is before the Court on Defendant Malik Hughes's Motion to Suppress Evidence. (Doc. 44.) In January 2022, Hughes was involved in a high-speed police chase. He was determined to be the driver of a stolen vehicle and was taken into custody following his arrest. Afterwards, the Government sought and executed a search warrant of his iPhone which had been seized from him following the police chase. Investigators discovered evidence on Hughes's iPhone of the crimes for which he is charged in this case relating to armed robbery of a postal carrier and a conspiracy to engage in bank fraud with stolen checks. Hughes now moves to suppress that evidence. (Doc. 44.) The Government opposes the Motion, and Hughes replied in support. (Docs. 47, 63.) For the reasons that follow, Defendant's Motion (Doc. 44) will be **DENIED**.

I.   BACKGROUND

   A.   Warrant and Search

On March 24, 2022, Franklin County, Ohio Municipal Court Judge Jodi L. Thomas signed a Search Warrant ("Warrant") authorizing the search of Defendant Malik Hughes's iPhone. (Doc. 47-1 at PageID 154–57.) The Warrant consists of four pages: (1) a summary

1

cover page, (2) a Warrant to Search, (3) Search Warrant – Affidavit ("Affidavit"), and (4) Affidavit in Support of Warrant to Search ("Affidavit in Support").[1] (*Id*.)

The Warrant is directed to the Superintendent of the Ohio State Highway Patrol of Columbus, Ohio and states:

> Whereas, there has been filed with me an affidavit pursuant to Criminal Rule 41C, Ohio Rules of Criminal Procedure. Satisfied that probable cause exists, I command you, in the name of the State of Ohio with the necessary and proper assistance, to enter, in the daytime into the said premises, place, property, vehicle, person, or electronic device known as:
> Apple Iphone 13 Max Pro belonging to one Malik Isaac Hughes (DOB-03-26-2003)

(*Id*. at PageID 155.) Judge Thomas instructed the search to be executed within 72 hours after the issuance of the Warrant and to diligently search pursuant to Criminal Rule 41B of the Ohio Rules of Criminal Procedure for:

> One (1) cellular phone seized from Mr. Malik Isaac Hughes on March 16th, 2022 to in[c]lude SIM and /or SD cards for the cellular phone, all related documentation, all stored data to include but not limited to: telephone numbers, passwords, encryption keys, access codes, files, applications, programs, ring tones, pictures, videos, phone books, callenders [sic], call history, voicemail, email, SMS/MMS messages, application data, hidden files, WiFi information, internet history (bookmarked and favorited sites), geographical data, any other data to include deleted data. All cellular and computer related accessories not specifically mentioned therein[.]

(*Id*.)

Page 3 of the Warrant is an Affidavit signed by both Judge Thomas and Officer Shaun M. Robles. (*Id*. at PageID 156.) The Affidavit states that Trooper Robles of Unit 0314, Office of Investigative Services Bucyrus District, Ohio State Highway Patrol, appeared before Judge Thomas and "deposes and says that the affiant has probable cause to believe and affiant does believe that:"

---

[1] The Court will refer to all four documents together as the "Warrant."

> All equipment having been used indicating intent to commit a violation of section Receiving Stolen Property, 2913.51, Possession of Drugs, 2925.11C3, Failure to Comply to a Lawful Order, 2921.331, Having Weapons While Under Disability, 2923.13, Obstructing Official Business, 2921.31; of the Ohio Revised Code. Any Other offenses of the Ohio Revised Code and any other evidence pursuant to Criminal Rule 41 is being kept in a certain premises, place, property, vehicle, person, or electronic device known as: Apple Iphone 13 Max Pro belonging to one Malik Isaac Hughes (DOB-3-26-2003). [sic]

(*Id*. at PageID 156). Page 4 page of the Warrant is the Affidavit in Support executed by both Judge Thomas and Officer Robles. The Affidavit in Support states that the "facts upon which such belief is based are as follows:"

> On 3-16-2022 at approximately 0220 hours Trooper Jeremy Bice with the OSHP Bucyrus Post was involved in a pursuit on US 23 near milepost 21 in Wyandot County. The suspect vehicle was traveling at approximately 103 miles per hour. Trooper Bice initiated a traffic stop and a pursuit ensued. The vehicle crashed and three of the four occupants fled the scene. After the crash, three suspects were located. Malik Hughes, Hanad Hoosh and Isiaiah Steele were arrested and transported to the Wyandot County Jail. Throughout the investigation it was determined the driver was Malik Hughes (DOB-03-6-2003). It was also determined the vehicle, a white 2019 Dodge Charger (VIN-2C3CDXGJ3KH546805) was reported stolen out of Texas. Throughout the search of the vehicle two guns were located and suspected marijuana. Malik Hughes Apple Iphone was seized as evidence. It is believed the information on Hughes phone contains evidence of criminal activity consistent with the above said charges. [sic]

(*Id*. at PageID 157).

**B. Government Affidavit**

The Government submitted an Affidavit of Alan J. Wilkins in support of its Response in Opposition to Defendant's Motion to Suppress. (Doc. 68.) Wilkins is a United States Postal Inspector and has been employed as such since June 1, 2013. (*Id*. at PageID 208.) He is presently assigned to the Cincinnati Field Office, Pittsburgh Division of the United States Postal Inspection Service ("USPIS") with investigative responsibility for southwest Ohio and northern Kentucky. (*Id*.) He completed Basic Inspector Training in August 2013, during which he was

3

instructed in criminal law, search and seizure, field enforcement techniques, firearms proficiency, drug and narcotics identification, drug and narcotics field testing, interviewing and evidence collection. (*Id*.) Since August 2013, Wilkins has worked with federal, state, and local law enforcement agencies in the prosecution of crimes involving the U.S. Mail and U.S. Postal Service including but not limited to mail fraud, bank fraud, mail theft, burglaries, robberies, homicides, dangerous mail investigations, and mailed narcotics. (*Id*.)

Wilkins attests that he is familiar with the facts and circumstances of the investigation in this case and the armed robbery of a postal carrier in Norwood, Ohio on January 19, 2022. (*Id*.) He reviewed the contents of the iPhone with phone number 740-602-0936 seized from Hughes on or about March 16, 2022 by the Ohio State Highway Patrol. (*Id*. at PageID 209.) Hughes's iPhone contained several pictures of vehicles, including photographs of the dashboards of vehicles and pictures of title paperwork on top of cars. Specifically, Hughes's iPhone contained two pictures that are connected to the vehicle used in the Norwood, Ohio armed robbery depicting dashboards of vehicles and pictures of title paperwork on top of cars, one of which includes Texas paperwork. (*Id*. at PageID 209–10.) Hughes's iPhone also contained photographs relating to the possession of stolen checks and stolen mail, including a photograph of many checks displayed, a photograph of black garbage bags of mail, and a photograph of an individual holding a large stack of money orders. (*Id*. at PageID 211–12.)

**C. Procedural History**

On March 20, 2024, Defendants Malik Hughes and Myafonazah Steward were charged in a multicount Indictment in this case. (Doc. 1.) On September 30, 2024, Steward pleaded guilty to Count 1 of a Superseding Information charging her with possession of stolen mail. (Doc. 32.) On March 19, 2025, the Government filed a Superseding Indictment adding Rommel Bush as a

4

defendant. (Doc. 51.) The following charges are pending: (1) conspiracy to commit bank fraud against Hughes, in violation of 18 U.S.C. §§ 1344, 2, and 1349; (2) robbery of mail, money, or other property of the United States against Hughes and Bush, in violation of 18 U.S.C. §§ 2114(a) and 2; (3) brandishing a firearm during and in relation to a crime of violence against Hughes and Bush, in violation of 18 U.S.C. §§ 924(c) and 2; and (4) theft of mail keys, in violation of 18 U.S.C. §§ 1704 and 2. (*Id*. at PageID 167–70.)

In Count 1, the Government alleges that from around January 1, 2022 through March 2024, Hughes conspired with others to execute a scheme to defraud financial institutions by obtaining stolen financial instruments, such as checks and money orders, from stolen mail. (*Id*. at PageID 168–69.) Then, the conspirators would "wash" the financial instruments to remove the ink and true information and add false information, altering the recipient and amount of the check. (*Id*. at 169.) Conspirators would then obtain access to bank accounts, deposit the fraudulent checks into those accounts, and then withdraw the cash before the bank could detect the fraud. (*Id*.)

In Count 2, the Government alleges that on January 19, 2022, Hughes and Bush assaulted and aided and abetted in the assault of Victim #1, a United States postal carrier, with the intent to rob mail, money, and other property of the United States, putting the life of the victim in jeopardy by use of a firearm. (*Id*.) In Count 3, the Government alleges that on January 19, 2022, Hughes and Bush knowingly brandished a firearm during and in relation to the robbery of a United States Postal Service postal carrier. (*Id.* at PageID 169–70.) Lastly, in Count 4, the Government alleges that Hughes and Bush knowingly stole and aided and abetted in stealing from Victim #1 a key to a lock box, lock drawer, or authorized receptable for the deposit of mail, namely, a United States Postal Service arrow key. (*Id*. at PageID 170.)

On February 24, 2025, Hughes filed a Motion to Suppress Evidence, to which the Government responded in opposition.² (Docs. 44, 47.) On March 27, 2025, Hughes replied in support of his Motion to Suppress. (Doc. 63.) On April 22, 2025, the Government filed an Affidavit in support of its Memorandum in Opposition. (Doc. 68.) For the reasons that follow, the Court will **DENY** Hughes's Motion to Suppress.

**II.     STANDARD OF LAW**

Hughes moves to suppress the evidence seized from his iPhone on the basis that the search warrant was issued without probable cause and no exception applies. "The Fourth Amendment safeguards '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Winters*, 782 F.3d 289, 295 (6th Cir. 2015) (citing U.S. Const. amend. IV). Pursuant to the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Kaley v. United States,* 134 S. Ct. 1090, 1103 (2014)). The Sixth Circuit opined:

> Probable cause exists if the facts, circumstances, and "reasonably trustworthy information" would allow a person "of reasonable caution" to believe that a crime has been committed. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L.Ed. 1879 (1949). This is "a practical, nontechnical conception," *ibid.*, and it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983). We give "great deference" to the issuing magistrate's probable-cause determination. *Id*. at 236, 103 S. Ct. 2317.

---

² Although the filing of a motion tolls the Speedy Trial clock, *see* 18 U.S.C. §3161(h)(D), on January 21, 2025, the Court tolled the Speedy Trial clock at the request of the parties until June 9, 2025. (Doc. 43.)

*United States v. Neuhard*, 770 F. App'x 251, 253 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 570 (2019).

In determining whether a search warrant is supported by probable cause, a court may consider only the "four corners of the affidavit." *United States v. Ruffin*, 979 F.3d 528, 531–32 (6th Cir. 2020). Thus, "information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (quoting *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)).

Probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also Ruffin*, 979 F.3d at 531. "The particularity requirement encompasses two separate concerns—whether the warrant supplies adequate information to guide officers in selecting what items to seize, and whether the category of items specified in the warrant is too broad because it includes articles that should not be seized." *Neuhard*, 770 F. App'x at 253 (citing *United States v. Evers*, 669 F.3d 645, 651–52 (6th Cir. 2012)). "[T]he particularity requirement may be satisfied through the express incorporation or cross-referencing of a supporting affidavit that describes the items to be seized, even though the search warrant contains no such description." *United States v. Rarick*, 636 F. App'x 911, 914 (6th Cir. 2016) (quoting *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011)). Thus, "the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)). To meet the particularity requirement, "[t]he degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *Rarick*, 636 F. App'x at 914 (citing *United States v. Greene,* 250 F.3d 471, 477 (6th Cir. 2001)). "The description of the things to be seized

should, however, be 'as specific as the circumstances and the nature of the activity under investigation permit.'" *Id*. (*citing Richards,* 659 F.3d at 537).

"In the context of searches of electronic devices, while recognizing the inherent risk that criminals can easily 'hide, mislabel, or manipulate files to conceal criminal activity,' we must also take care not to give the Government free rein to essentially do away with the particularity requirement by allowing it to examine every file on the device." *Id*. at 914–15 (citing *Richards,* 659 F.3d at 538). In this Circuit, the remedy for an overbroad warrant is not suppression of all items seized, but rather severance of the infirm portions "from the remainder which pass constitutional muster." *Id*. at 915 (citing *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006)).

### III. ANALYSIS

Hughes argues that the warrant to search his phone was issued without probable cause and was not particular enough to pass muster under the Fourth Amendment. For the reasons that follow, the Court will deny Hughes's Motion to Suppress Evidence.

**1. Probable Cause**

Probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also Ruffin*, 979 F.3d at 531. As discussed, the Warrant incorporates the Affidavit and Affidavit in Support by Officer Robles, who attests that he believed evidence of receiving stolen property, possession of drugs, failure to comply with a lawful order, having weapons under disability, obstructing official business, and other any other Ohio offense and evidence were being kept on Hughes's iPhone 13 Max Pro. (Doc. 47-1 at PageID 156.) He describes that the facts upon his belief are based includes the high-speed car chase that occurred on March 13, 2022 near milepost 21 in Wyandot County,

where the suspect vehicle, which was driven by Hughes, was traveling at 103 miles per hour. (*Id*. at PageID 157.) Trooper Bice initiated a traffic stop and a pursuit ensued, where the vehicle crashed and three of four occupants fled the scene. (*Id*.) After the crash, three suspects were located. (*Id*.) Malik Hughes, along with two other individuals, were arrested and transported to jail. (*Id*.) Officers determined the vehicle was stolen out of Texas. (*Id*.) A search of the vehicle produced two guns and suspected marijuana. (*Id*.) Officer Robles attests that Hughes's iPhone was seized as evidence, and that he believes "information on Hughes [sic] phone contains evidence of criminal activity consistent with the above said charges." (*Id*.)

Thus, here, the Affidavit in Support specified that Hughes's cell phone was seized as evidence from a crime scene and evidence of the "above said charges" of receiving stolen property, possession of drugs, failure to comply to a lawful order, having weapons while under disability, and obstructing official business" would be on his iPhone. (*Id*. at PageID 157, 156.) The facts support the inference that Hughes's iPhone was in the stolen vehicle Hughes was driving during the high-speed police chase, as it was recovered as evidence. The facts support the conclusion that there was a fair probability that evidence of the crimes of receiving stolen property, possession of drugs, failure to comply with a lawful order, having weapons under disability, and obstructing official business would be found on Hughes's iPhone.

### 2. Particularity

The parties also dispute whether the language authorizing a broad search of Hughes's iPhone meets the particularity requirement of the Fourth Amendment. "The particularity requirement encompasses two separate concerns—whether the warrant supplies adequate information to guide officers in selecting what items to seize, and whether the category of items specified in the warrant is too broad because it includes articles that should not be seized."

9

*Neuhard*, 770 F. App'x at 253 (citing *United States v. Evers*, 669 F.3d 645, 651–52 (6th Cir. 2012)). A warrant is valid when it is "as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999).

Hughes argues that the Warrant is not sufficiently particularized because it does not limit the search to evidence of any crime. "A warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime." *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018). In *Castro*, the Court found a search warrant permitting a search of broad categories of data on a cell phone was sufficiently particularized because it was constrained to a search for evidence of the particular crime of aggravated burglary. *Id*. However, the Court in *Castro* excised a "catch-all" phrase allowing officers to search for evidence of "a crime." *Id.* at 964–65. In this Circuit, "an 'infirmity due to overbreadth does not doom the entire warrant.'" *Id.* at 965 (citing *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001)). "The remedy is to sever the offending phrase from the warrant, suppress any evidence collected under it, and admit the evidence collected under the valid portions that remain." *Id.* Further, "[t]he particularity requirement may be satisfied through the express incorporation or cross-referencing of a supporting affidavit that describes the items to be seized, even though the search warrant contains no such description." *Rarick,* 636 at 914 (citing *Richards,* 659 F.3d at 537).

Here, as in *Castro*, the Court applies a common-sense reading of the Warrant. The Warrant incorporates the Affidavit and Affidavit in Support. 881 F.3d at 965; *see Rarick*, 636 F. App'x at 914 (finding cross-referencing of the affidavit was sufficient to incorporate it into the warrant itself for Fourth Amendment analysis). The Warrant states that Officer Robles believed

10

evidence of the crimes of receiving stolen property, possession of drugs, failure to comply with a lawful order, having weapons under disability, obstructing official business, and "Any Other offenses of the Ohio Revised Code and any other evidence pursuant to Criminal Rule 41" would be found on Hughes's iPhone. (Doc. 47-1 at PageID 156.) The Warrant explicitly states, "Whereas, there has been filed with me an affidavit," which incorporates the attached Affidavit and Affidavit in Support. (*Id*. at PageID 155.) Both the Affidavit and Affidavit in Support are attached to the Warrant and are signed by both the issuing Judge and the attesting officer. (Doc. 47-1 at PageID 154–57.) Thus, the Affidavit and Affidavit in Support are sufficiently incorporated into the Warrant and are particularized in that they authorize search for evidence of specific crimes. As in *Castro*, the "catch-all" phrase of "Any Other offenses of the Ohio Revised Code and any other evidence pursuant to Criminal Rule 41" is overly broad but not fatal. *Castro*, 881 F.3d at 965. Consistent with precedent in this Circuit, the Court will excise the catch-all phrase without invalidating the warrant.[3] Thus, read as a whole with the inclusion of the Affidavit and Affidavit in Support, the Warrant limits the search to evidence of specific crimes.

Hughes also argues that search of his iPhone was impermissibly broad, essentially allowing a search of anything on his phone. The Warrant authorized a search of:

> One (1) cellular phone seized from Mr. Malik Isaac Hughes on March 16th, 2022 to in[c]lude SIM and /or SD cards for the cellular phone, all related documentation, all stored data to include but not limited to: telephone numbers, passwords, encryption keys, access codes, files, applications, programs, ring tones, pictures, videos, phone books, callenders [sic], call history, voicemail, email, SMS/MMS messages, application data, hidden files, WiFi information, internet history (bookmarked and favorited sites), geographical data, any other data to include deleted data. All cellular and computer related accessories not specifically mentioned therein[.]

---

[3] As in *Castro*, there is no evidence that the Government seized any evidence under this broad section. See *id*. at 965–66.

11

(Doc. 47-1 at PageID 155.) The search language is broad, but broad searches are appropriate in certain circumstances. Here, Hughes is described to have engaged in a variety of criminal activities, and his iPhone was recovered as evidence after he engaged in those suspected crimes. The law accounts for the fact that it is not always evident where within an electronic device the evidence of a crime may be located. In *United States v. Bass*, the Court found scope of the warrant authorizing search for "any records of communication, indicia of use, ownership, or possession, including electronic calendars, address books, e-mails, and chat logs" was "reasonable under the circumstances at the time" because officers could not have known at the time of execution of the warrant where the information was located in the phone or in what format. 785 F.3d 1043, 1049–50 (6th Cir. 2015). The Court is persuaded that here, officers could not have known in what format evidence of receiving stolen property, possession of drugs, failure to comply with a lawful order, having weapons under disability, and obstructing official business would have been on Hughes's phone at the time the Warrant was sought. Under the circumstances, the search was reasonable, just as was the broad search authorized in *Bass*.

      Hughes also argues that the search was too broad because there was no temporal limitation on the search. The Sixth Circuit has rejected the idea that it should declare a search of an electronic device unreasonable based on failure to use a date filter, noting that "we will not get involved in the minutiae of determining specifically what methodologies should be taken, but will rather examine whether the search executed under the facts of this case was reasonable." *Rarick*, 939 F. App'x at 916; *see also Neuhard*, 770 F. App'x 251, 254 (6th Cir. 2019) (rejecting the argument that the Fourth Amendment requires search protocols; rather, the court must undertake a "reasonableness analysis on a case-by-case-basis"). The Court finds that the search in this case was reasonable under the circumstances.

### D. Good Faith Exception

Alternatively, the good faith exception applies. Generally, evidence obtained in violation of the Fourth Amendment cannot be used in criminally prosecuting the victim of the illegal search and seizure. *Illinois v. Krull*, 480 U.S. 340, 347 (1987). In 1984, however, the Supreme Court "established a new objective inquiry limiting suppression to circumstances in which the benefits of police deterrence outweigh the heavy costs of excluding 'inherently trustworthy tangible evidence' from the jury's consideration." *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020) (quoting *United States v. Leon*, 468 U.S. 897, 907 (1984)).

Pursuant to this good faith exception, evidence "obtained in objectively reasonable reliance" on a "subsequently invalidated search warrant" need not be suppressed where an officer acts in good faith reliance on the warrant. *Brown*, 828 F.3d at 385 (quoting *Leon*, 468 U.S. at 922). The Supreme Court in *Leon* identified four situations in which an officer's reliance cannot be considered "objectively reasonable:" (1) when the warrant is issued on the basis of an affidavit that an affiant knows—or is reckless in not knowing—contains false information; (2) when the issuing magistrate abandons his or her neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914–23). Thus, if one of these situations applies, the evidence must be suppressed even if officers executing the warrant believed it to be valid.

Affidavits "so lacking in indicia of probable cause" are commonly called "bare bones" affidavits. *United States v. Ward,* 967 F.3d 550, 554 (6th Cir. 2020) (quoting *United States v.*

*White*, 874 F.3d 490, 496 (6th Cir. 2017)). "To elude the 'bare bones' label, the affidavit must state more than 'suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge' and make '*some* connection' between the illegal activity and the place to be searched." *Id.* (quoting *United States v. Christian*, 925 F.3d 305, 312–13 (6th Cir. 2019) (en banc) (emphasis in original)). The Court must "read the affidavit holistically and examine the totality of the circumstances in making this inquiry." *Id.*

"We must take care not to confuse a bare bones affidavit with one that merely lacks probable cause." *Gilbert*, 952 F.3d at 763. As the Sixth Circuit explained:

> There must be daylight between the "bare bones" and "substantial basis" standards if *Leon*'s good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function. *See Leon*, 468 U.S. at 906–07, 913–21, 104 S. Ct. 3405; *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc). Thus, "[a]n affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding; rather, it must be *so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *White*, 874 F.3d at 497.

*Id.* (emphasis in original).

The objective reasonableness determination "inquires 'whether a reasonably well trained officer would have known that the search was illegal despite the [judge's] decision'" to the contrary. *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) (quoting *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003)). "[R]easonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." *United States v. Merriweather*, 728 F. App'x 498, 505 (6th Cir. 2018) (quoting *White*, 874 F.3d at 500).

An officer's reliance upon the Warrant in this case was not objectively unreasonable. Hughes relies upon a district court case from Florida to support his argument that the lack of temporal limitation on his iPhone search as well as a lack of search protocol demonstrates that it was on its face invalid, and thus, the good faith exception should not apply. *See United States v. Vernelus*, No. 23-cr-20033-FAYLES, 2024 WL 4973326, at *9–10 (S.D. Fla. 2024) (good faith exception did not apply where warrant lacked temporal limitations), *report and recommendation adopted in part*, 2024 WL 4688857 (S.D. Fla. 2024). But as has been discussed, the Sixth Circuit has rejected that argument. *Rarick*, 939 F. App'x at 916; *Neuhard*, 770 F. App'x at 254.

Hughes also argues that the good faith exception should not apply because an objective officer would see the deficiencies in the Warrant, because it lacked allegations stating the phone was used during the alleged offenses or that it was used to store evidence of the offenses or regarding GPS ping data showing that the phone was in the area of the crime for which the defendant was being investigated. In support, he cites *United States v. Tanzil*, where a district court in Michigan found the good faith exception did not apply where an objectively reasonable officer would have recognized the warrant deficiencies, which included stating the phone was used during the alleged offenses or to store evidence of the offenses. No. 23-20654, 2025 WL 18642, at *3 (E.D. Mich. Jan 2, 2025), *appeal filed*, No. 25-1102 (6th Cir. Jan. 31, 2025). He argues an officer would have recognized the obvious deficiencies in the Warrant, and thus the good faith exception should not apply.

The Court is not persuaded by this argument. Here, the Warrant incorporates a detailed Affidavit and Affidavit in Support describing Hughes engaging in a high-speed police chase in a stolen vehicle and that his iPhone–along with marijuana and firearms–were seized afterwards. The Affidavit and Affidavit in Support establish a connection between the alleged crimes and

15

illegal activity, including receiving stolen property, and the place to be searched, Hughes's iPhone, which was recovered upon his arrest. An officer's reliance upon the Warrant was objectively reasonable. The Warrant and incorporated affidavits are not so lacking in probable cause to be "bare bones." Thus, the good faith exception would apply to save the Warrant.

### E. Inevitable Discovery and Plain View Doctrines

The Government alternatively argues that inevitable discovery[4] and the plain view doctrines[5] apply. Because the Court finds the good faith exception applies, it will not address these alternate arguments.

### IV. CONCLUSION

For the reasons set forth, Hughes's Motion to Suppress Evidence (Doc. 44) is **DENIED**.

**IT IS SO ORDERED.**

S/Susan J. Dlott
Judge Susan J. Dlott
United States District Court

---

[4] The Government asserts a separate investigation into the postal carrier robbery led to Malik Hughes, which showed his cell phone traveled from Columbus to the cite of the robbery at the time of the robbery. Because this evidence is not in the record, the Court cannot consider the merits of this argument at this stage.

[5] Because of the limited record, the Court would only consider the plain view doctrine with respect to the limited evidence before the Court, which is a handful of photographs. (*See* Doc. 68.)